UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DENISE SLATER AND ANDREW SLATER, AS PARENTS AND NEXT FRIEND OF ROBERT SLATER, A MINOR<br>Plaintiffs | ) | C.A. No. 06-527ML |
| v. | ) | |
| EXETER-WEST GREENWICH REGIONAL SCHOOL DISTRICT<br>Defendant | ) | |

**PLAINTIFFS' RULE 16 STATEMENT**

Pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), this is a complaint for judicial review of a final decision of the Hearing Officer appointed by the Rhode Island Department of Education in regard to special education services provided by the Defendant, Exeter-West Greenwich Regional School District, to the Plaintiff's son.

**Summary of Facts**

Robert Slater ("Bobby") is the twelve-year old son of the Plaintiffs, Denise and Andrew Slater. Bobby attended public school in the Exeter-West Greenwich Regional School District from preschool through the sixth grade. He is now attending the Wolf School, a private school in Providence, Rhode Island, where he was unilaterally placed by his Parents in September 2006.

Bobby has been diagnosed with dyslexia, a severe language based learning disability affecting his reading and written expression abilities. As a direct result of his disability, Bobby exhibits significant difficulty putting information into words; retrieving words and information; perceiving phonemic differences within word pairs; formulating sentences; and spontaneously thinking of words according to specific rules. He also has difficulty with sensory integration, including the performance of tasks that requires visual, motor, prioritizing and planning skills.

Despite receiving a variety of special education services in the Exeter-West Greenwich School District since preschool, Bobby has failed to progress effectively in reading. During July 2005, his parents arranged for Bobby to be evaluated by Dr. Carol Emerson, a neuropsychologist, due to concerns about his reading abilities, as well as his mental health. At the time of Dr. Emerson's evaluation, Bobby was demonstrating increasing signs of depression, irritability, withdrawal and frustration about his lack of success in school. Dr. Emerson found that while Bobby had cognitive abilities in the average to high average range, his reading skills ranked in the below average range. Dr. Emerson determined that Bobby was able to read only at the second grade level in July 2005, the summer before he entered sixth grade. Based upon her review of previous testing, Dr. Emerson concluded that Bobby had made an approximate gain of

only .8 grade levels in reading skills over the previous six years while receiving special education services. In Dr. Emerson's opinion, Bobby's lack of progress was attributable in large part to the Defendant's failure to provide a sequential and consistent multi-sensory approach to reading. Dr. Emerson's findings are supported by several other testing protocols administered to Bobby during the relevant time frame.[1]

Dr. Emerson retested Bobby at the end of the 2005-06 school-year and found that he had made minimal gains in reading. Bobby was also tested by Dr Steve Imber, an educational psychologist, who found that Bobby's reading scores had actually declined in many areas. Furthermore, Bobby's classroom teachers during the 2005-06 school-year described him as frustrated, confused and disengaged, and characterized him as the "most severely dyslexic student" receiving services. In the opinion of Dr. Emerson and Dr. Imber, Bobby needs to be taught in an immersion-based program, providing small class instruction of 7 – 8 students, with all related services provided within the classroom.

Despite Bobby's lack of progress, the Defendant proposed an Individualized Education Program ("IEP") for the 2006-07 school-year under which Bobby would receive instruction in a collaborative regular education classroom within the District in the subjects of math, social studies and science, with the assistance of a regular education and a special education teacher. The classroom size in the collaborative classroom would range from 20-22 students, four or five of whom would be on IEPs. The Defendant further proposed to provide Bobby with "intensive reading" for .7 hours per day in a class of five students, and three periods of one-to-one Orton-Gillingham reading instruction per week. Of great concern to the Plaintiffs, the "intensive reading" instruction offered by the District for the 2006-07 school year was actually .8 hours **less** per day than Bobby received in Grade 6.

In May 2006, the Parents rejected the Defendant's proposed IEP because the program proposed by the Defendant essentially mirrored the program that had been provided in Grade 6, with the notable exception that Bobby would receive **less** remedial reading services. The Parents requested that the Defendant place Bobby in a private school with specialized reading instruction in order to remediate his serious learning disabilities. When the Defendant declined, the Parents requested an Impartial Due Process Hearing with the Rhode Island Department of Education, alleging that the Defendant failed to develop an IEP that would provide Bobby with a free appropriate public education. The parents requested that the Hearing Officer order placement at a private school at the Defendant's expense.

After a hearing, the Hearing Officer issued an Administrative Decision on November 7, 2006, finding in favor of the Defendant. The Hearing Officer made no findings of fact in her decision. Rather, the decision sets forth an incomplete and inaccurate recitation of the testimony of the witnesses, ignoring testimony favorable to the Plaintiffs, without any findings of fact or any findings concerning the credibility of witnesses. For instance, the Hearing Officer concluded that Bobby's "services have increased over the years," despite uncontested evidence that the Defendant had reduced Bobby's intensive reading instruction by more than fifty percent. The

[1] As alleged in the Complaint, the Plaintiffs allege that the Defendant tested Bobby without their permission on May 5, 2006, and then suppressed the results of the testing because the scores demonstrated that Bobby had progressed only .1 grade levels in reading over a full year while receiving special education services.

Plaintiffs submit that the Administrative Decision is incorrect as a matter of law; is not supported by the preponderance of the evidence; and is arbitrary and capricious.

**Standard of Review**

Judicial review under the IDEA "is something of a hybrid of more familiar forms of judicial decision-making, somewhere between trial *de novo* and "substantial evidence" review of a closed administrative record." Nein v. Greater Clark County School Corporation, 95 F.Supp. 961 (S.D.Ind. 2000). "The IDEA provides that a district court 'shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of evidence, shall grant such relief as the court determines is appropriate.'" Id., citing 20 U.S.C. § 1415(i)(2)(B). While some deference may be given to the hearing officer's decision, the court is permitted to "take an independent and critical look at the evidence," and "the amount of deference bestowed upon the hearing officer is increased where her findings are 'thorough and complete.'" Id., at 965 (citations omitted).

**Legal Issues**

Whether the Defendant School District proposed an IEP for Bobby that was adequate to provide him with a free appropriate public education required under the IDEA or, in other words, whether it provided him with a "meaningful educational benefit"? In making this determination, the Court must decide what level of educational benefit is necessary to satisfy the IDEA, and must also resolve the factual dispute as to the amount of progress made by Bobby.

Whether the Wolf School is an appropriate educational placement for Bobby?

Whether the Defendant violated the IDEA and the substantive and procedural due process rights of the Plaintiffs by administering tests to Bobby, without parental consent, and by then suppressing the results of that testing?

The Plaintiffs,

ANDREW AND DENISE SLATER,
By their Attorney,

/s/

Jeffrey M. Sankey, RI Bar No. 4892
DOLAN CONNLY, P.C.
50 Redfield Street, Suite 202
Boston, MA 02212
(617) 265-3100
(617) 265-3101 Facsimile
jsankey@dolanconnly.com