UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DENISE SLATER AND ANDREW SLATER, AS PARENTS AND NEXT FRIEND OF ROBERT SLATER, A MINOR<br>Plaintiffs | ) | |
| v. | ) | C.A. No. 06-527ML |
| EXETER-WEST GREENWICH REGIONAL SCHOOL DISTRICT<br>Defendant | ) | |

**DEFENDANTS' VERIFIED RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

1. Robert Slater ("Bobby") is a twelve-year old boy presently attending seventh grade at the Wolf School in East Providence. Bobby attended public school in the Exeter-West Greenwich School District from preschool through the sixth grade. Bobby was placed at the Wolf School by his parents, Plaintiffs Denise and Andrew Slater, in September 2006.

RESPONSE 1

Admitted.

2. Bobby has been diagnosed with a severe language based learning disability in the areas of reading and written expression characteristic of dyslexia by Dr. Carol Emerson, a neuropsychologist. (Exhibit 7) (Testimony of Dr. Carol Emerson, 8/10/06, p. 7).[1]

RESPONSE 2

Admitted.

[1] References to "Exhibits" are to those exhibits marked by the parties in the Administrative Hearing conducted in this matter, the record of which has been provided to the Court. References to testimony are to the transcripts of the witnesses who testified during the Hearing, identified by the name of the witness and the date and page of the transcript.

3. On intelligence tests, Bobby demonstrates average potential and is capable of average achievement. (Exhibit 7) (Testimony of Dr. Carol Emerson, 8/10/06, p. 15).

RESPONSE 3

Admitted.

4. As a product of his disability, Bobby exhibits significant difficulty putting information into words, retrieving words and information, perceiving phonemic differences within word pairs, formulating sentences and spontaneously thinking of words according to specific rules. He also has difficulty with sensory integration, including the performance of tasks that requires visual, motor, prioritizing and planning skills. (Exhibit 7).

RESPONSE 4

Denied.

5. The Defendant, Exeter-West Greenwich Regional School District, agrees that Bobby suffers from dyslexia. (Maureen DeCrescenzo Testimony, 9/6/06, p. 52).

RESPONSE 5

Admitted.

6. Bobby has received special education services in the Exeter-West Greenwich School District since preschool to address his learning disability. (Denise Slater Testimony, 8/16/06, p. 8) (Maureen DeCrescenzo Testimony, 9/6/06, pp. 30-32).

RESPONSE 6

Admitted.

7. Since preschool, Bobby has received a variety of special education services for his learning disability, including before- and after-school services and summer programming. (Denise Slater Testimony, 8/16/06, p. 9).

RESPONSE 7

Admitted.

8. Bobby's reading difficulties are manifested in his day-to-day activities, including recent occasions where he has been unable to read a recipe or a menu, read exhibits during a field trip or read something as simple as his fortune at a Chinese restaurant. (Denise Slater Testimony, 8/16/06, pp. 6-7) (Testimony of Dr. Carol Emerson, 8/10/06, p. 11).

RESPONSE 8

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Denise Slater and Dr. Carol Emerson are facts, and to the extent they are considered facts, they are denied. Otherwise, denied.

9. Bobby first began exhibiting emotional difficulties relating to his reading disability in the summer after first grade, frequently crying and demonstrating frustration and anxiety. Bobby recognized that he was "different from other kids." (Denise Slater Testimony, 8/16/06, p. 11-12) (Exhibit 9).

RESPONSE 9

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Denise Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

10. The school district has attempted to accommodate Bobby's disability by removing Bobby from the regular education classroom for intensive reading and other services in separate classrooms. This procedure is sometimes referred to as a "pullout." (Denise Slater Testimony, 8/16/06, p. 16).

RESPONSE 10

Admitted that this is one of the accommodations provided by the District in appropriate circumstances. Otherwise, denied.

11. Bobby has expressed a dislike for "pullouts" because he misses things that his classmates are doing and also because other students have teased him about his disability. Frequently, during the 2005-06 school-year, Bobby would arrive home upset and crying and would not want to return to school. (Denise Slater Testimony, 8/16/06, pp. 16-17).

RESPONSE 11

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Denise Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Dr. Emerson Evaluation – July 2005**

12. During July 2005, Bobby's parents arranged for Bobby to be evaluated by a neuropyschologist, Dr. Carol Emerson, due to increasing concerns about his failure to progress in reading, as well as his mental health. According to his parents, Bobby was showing increasing signs of depression, including crying spells, irritability, withdrawal from activities and frustration about his lack of success in school. (Exhibit 7)(Testimony of Dr. Carol Emerson, 8/10/06, pp. 5, 13).

RESPONSE 12

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

13. On psychological tests administered by Dr. Emerson, Bobby scored in the average to high average range in nonverbal reasoning; in the average range for comprehension of oral vocabulary words; and in the high average range in following complex oral directions. However, Bobby scored in the below average range in tests requiring him to put information into words, as well as phonemic awareness, sentence formulations, grammar, object naming and verbal fluency. (Exhibit 7) (Testimony of Dr. Carol Emerson, 8/10/06, pp. 15-16).

RESPONSE 13

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts or that her testing is accurate and to the extent they are considered facts, they are denied. Otherwise, denied.

14. Dr. Emerson found that Bobby was able to read only at the second grade level in July 2005, two months before Bobby was scheduled to begin sixth grade. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 12, 18-22,25) (Exhibit 7).

RESPONSE 14

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts or that her testing is accurate. Otherwise, denied.

15. Based upon her review of previous testing, Dr. Emerson concluded that Bobby had made an approximate gain of .8 grade levels in reading skills over the previous six years while receiving special education services. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 23-24) (Exhibit 7).

RESPONSE 15

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts or that her testing is accurate. Otherwise, denied.

16. In Dr. Emerson's opinion, Bobby's lack of progress was attributable in large part to the Defendant's failure to provide a sequential and consistent multi-sensory approach to reading. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 25-28) (Exhibit 7).

RESPONSE 16

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts or that her testing is accurate. Otherwise, denied.

17. In Dr. Emerson's opinion, the reading skills that Bobby struggles to perform when entering Grade 6 were skills that should have been developed by the end of second grade. (Exhibit 7).

RESPONSE 17

Admitted that the record contains testimony to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Carol Emerson are facts or that her testing is accurate. Otherwise, denied.

**NECAP Testing – Fall 2005**

18. On the state-wide NECAP test administered in the fall of 2005, Bobby scored "substantially below proficient" in both reading and mathematics. (Exhibit 11).

RESPONSE 18

Admitted.

19. In reading comprehension, Bobby answered only one question correctly out of 21, compared to a school average of 12.7 correct answers and a state average of 11.9 correct answers. (Exhibit 11).

RESPONSE 19

Admitted.

20. In word identification and vocabulary, Bobby answered only three of ten questions correctly, compared to a school average of 7.5 and a state average of 6.7. (Exhibit 11).

RESPONSE 20

Admitted.

**2005-06 IEP**

21. Under his IEP for the 2005-06 school year, Bobby received math, science and social studies in the regular education classroom under a collaborative program; intensive reading in a group of seven special education students five days per week; and, beginning in February 2006, Orton-Gillingham reading instruction three days per week. (Exhibit J).

RESPONSE 21

Admitted.

**Observations of Regular Education Teacher, Anthony Buco**

22. During the 2005-06 school year, Bobby was provided with the Grade 6 math and science curriculum in a regular education classroom of 23 students. The math and science class was taught by the regular education teacher, Anthony Buco, with the assistance of a special educator. Including Bobby, there were seven students with IEPs in the classroom. (Buco Testimony, 8/23/06, pp. 78-81, 91).

RESPONSE 22

Admitted.

23. In regard to Bobby's social skills, Mr. Buco testified that Bobby "tends to be a little bit away from [other students in the classroom]" and that "he is not as . . . interactive with them, but with the adults he was fine." (Buco Testimony, 8/23/06, pp. 80-81).

RESPONSE 23

Admitted that Mr. Buco testified to this effect. However, the Defendant does not admit that the opinions expressed by Mr. Buco are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

24. When Bobby had reading and writing difficulties in the classroom, the special educator would provide assistance in the classroom by reading to him, or he would be given instructions verbally. (Buco Testimony, 8/23/06, pp. 81, 83) (Sherman Testimony, 8/23/06, p.17).

RESPONSE 24

Admitted.

25. Mr. Buco did not observe "any progress in reading." (Buco Testimony, 8/23/06, pp. 83, 91-92).

RESPONSE 25

Admitted that Mr. Buco testified to this effect. However, the Defendant does not admit that the opinions expressed by Mr. Buco are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

26. Mr. Buco described that Bobby was "very frustrated" with reading "so, you have to sit down with him and actually read with him, but he would be very frustrated with that." (Buco testimony, 8/23/06, p. 83). Bobby "would almost become angry because he can't read the words, very frustrated, and you could see a tenseness in his face." (Buco Testimony, 8/23/06, p. 89).

RESPONSE 26

Admitted that Mr. Buco testified to this effect. However, the Defendant does not admit that the opinions expressed by Mr. Buco are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

27. Mr. Buco observed that Bobby was very confused with the reading instruction because "[p]eople were showing him a couple of different things and he was getting very confused with that." (Buco Testimony, 8/23/06, pp. 92).

RESPONSE 27

Admitted that Mr. Buco testified to this effect. However, the Defendant does not admit that the opinions expressed by Mr. Buco are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

28. Mr. Buco testified that, in his 22 years of teaching, "I think Bobby is a kid that I think has been so severe in a reading deficit that I have ever seen." (Buco Testimony, 8/23/06, pp. 92-93).

RESPONSE 28

Admitted.

29. In regard to the Grade 7 curriculum, Mr. Buco testified that, in his opinion, if there is a science book used in the curriculum, Bobby "is going to have problems." (Buco testimony, 8/23/06, p. 84). In regard to the proposed IEP, Mr. Buco indicated that, "If he is in the right setting, he will probably do quite well, but I can't speak for the reading, which is a big problem." (Buco Testimony, 8/23/06, p. 86).

RESPONSE 29

Admitted that Mr. Buco testified to this effect. However, the Defendant does not admit that the opinions expressed by Mr. Buco are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Observations of Regular Education Teacher, Danielle Smith**

30. During the 2005-06 school year, Bobby was provided with the Grade 6 social studies curriculum in a regular education classroom of 22 students. The social studies class was taught three times per week by the regular education teacher, Danielle Smith, with the

assistance of a special educator who was in the classroom two times per week. Including Bobby, there were five students with IEPs in the classroom. (Smith Testimony, 8/23/06, pp. 105-06).

RESPONSE 30

Admitted.

31. Ms. Smith described Bobby as "a very, very bright boy, very articulate, excellent grasp of concepts . . . but when it came to anything with a written word, frustrated to the point of being completely disengaged in the class, any time he had to do any reading." (Smith Testimony, 8/23/06, p. 107).

RESPONSE 31

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

32. Ms. Smith observed that Bobby "resisted working with other children." She noted that "there were times in the class when we were working on strategic reading and he worked from the textbook and he couldn't take part in that. He didn't want to be different from everybody else in the classroom." (Smith Testimony, 8/23/06, p. 111).

RESPONSE 32

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

33. Ms. Smith testified that Bobby was unable to read independently at the sixth grade level. (Smith Testimony, 8/23/06, p. 112).

RESPONSE 33

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

34. In Ms. Smith's classroom, Bobby "cried sometimes." When he worked with the aide or special education teacher, "he would have his chair tipped back and looking out the window and sometimes you would give him the materials and he would turn completely away and say, 'I am not going to bother with that.'" (Smith Testimony, 8/23/06, pp. 107-08).

RESPONSE 34

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

35. Bobby was expected to use the sixth grade textbook, with the assistance of the special educator who would "read it to him." (Smith Testimony, 8/23/06, p. 108).

RESPONSE 35

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

36. Ms. Smith testified that, when the special educator was not available, "it would be pretty difficult to meet the needs of all of the students with the IEPs." (Smith Testimony, 8/23/06, p. 109).

RESPONSE 36

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

37. Ms. Smith testified that she was "very frustrated" with the services that were being provided to Bobby, and that she "really [didn't] know what else could be done for him." (Smith Testimony, 8/23/06, p. 109).

RESPONSE 37

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts. Otherwise, denied.

38. Ms. Smith gave Bobby a "passing" grade in social studies, but she graded him strictly on his oral presentations. Other students were graded on their performance on written tests. (Smith Testimony, 8/23/06, p. 110).

RESPONSE 38

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

39. Ms. Smith testified that "half" of the Grade 6 social studies curriculum "was teaching strategic reading for suppository text," but "[Bobby] didn't do any of that." (Smith Testimony, 8/23/06, p. 114).

RESPONSE 39

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

40. Bobby's inability to read "created a lot of problems for him" to access the social studies curriculum and caused him to fall behind his peers," despite his cognitive ability to understand the material. (Smith Testimony, 8/23/06, p. 111).

RESPONSE 40

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

41. According to Ms. Smith, Bobby did not fit the profile of the other students in the classroom with IEPs because Bobby's disability was based upon an inability to read, not an inability to grasp concepts or to stay on task. (Smith Testimony, 8/23/06, p. 109).

RESPONSE 41

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

42. Ms. Smith also taught language arts, but Bobby was "pulled out" of that class along with two other students. (Smith Testimony, 8/23/06, pp. 105, 112).

RESPONSE 42

Admitted that Ms. Smith testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Smith are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Observations of Speech & Language Teacher, Ms, McWeeney**

43. Lee Ann DiSalvia McWeeney provided speech and language services to Bobby during the 2005-06 school year. (McWeeney Testimony, 9/6/06, p. 4).

RESPONSE 43

Admitted.

44. During her work with Bobby, Ms. McWeeney noted that Bobby was experiencing frustration as a result of being exposed to "different [reading] program approaches," culminating in an incident in which Bobby was crying uncontrollably. (Exhibit H) (McWeeney Testimony, 9/6/06, p. 9).

RESPONSE 44

Admitted that Ms. McWeeney testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. McWeeney are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

45. Ms. McWeeney questioned the "clinical validity and therapeutic soundness of presenting two different [reading] approaches to accomplish the same goal." (Exhibit H) ((McWeeney Testimony, 9/6/06, p. 13).

RESPONSE 45

Admitted that Ms. McWeeney testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. McWeeney are facts. Otherwise, denied.

46. Although Ms. McWeeney presented her concerns at a team meeting on May 26, 2006, no one involved with the team initiated any action to address her concerns. (McWeeney Testimony, 9/6/06, pp. 14-15).

RESPONSE 46

Admitted that Ms. McWeeney testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. McWeeney are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Testimony of Special Education Teacher, Denise Sherman**

47. Bobby was provided with "intensive reading" services by a special educator, Denise Sherman, during Grades 4 through 6. Ms. Sherman also served as Bobby's "case manager" during the 2005-06 school year. (Sherman Testimony, 8/23/06, pp. 9-11, 44).

RESPONSE 47

Admitted.

48. The intensive reading program met five days per week, with seven students on IEPs, including Bobby. Bobby was the "most severely dyslexic" student in the group, and the student who performed at the "lowest reading level." (Sherman Testimony, 8/23/06, p. 15).

RESPONSE 48

Admitted.

49. In Ms. Sherman's opinion, Bobby is reading at the fourth grade level, and is "one of a few most disabled children I have ever worked with" in over twenty years. (Sherman Testimony, 8/23/06, p. 28).

RESPONSE 49

Admitted.

50. Based upon testing conducted during the 2005-06 school year, Ms. Sherman acknowledged that, while Bobby was reading more words correctly per minute, his fluency did not improve at the rate expected of a sixth grader. In fact, Bobby's percentage of words read correctly declined from the target rate. (Sherman Testimony, 8/23/06, pp.51-53) (Exhibit M).

RESPONSE 50

Admitted.

51. Based upon the Woodcock Diagnostic Reading Battery administered by Ms. Sherman on May 24, 2005, Bobby's "Total Reading" grade equivalent was 3.4. (Exhibit II).

RESPONSE 51

Admitted.

52. Ms. Sherman requested permission to administer the Woodcock Diagnostic Reading Battery in May 2006, but the Parents declined to authorize additional testing. (Sherman Testimony, 8/23/06, pp. 68-69).

RESPONSE 52

Admitted.

53. Ms. Sherman personally drafted Goal #1 of the proposed 2006-07 IEP. (Sherman Testimony, 8/23/06, p. 71)(Exhibit I).

RESPONSE 53

Admitted.

54. In Block 13 of Goal #1 of the proposed 2006-07 IEP, Ms. Sherman indicated that the WDRB ("Woodcock Diagnostic Reading Battery") had been administered on May 5, 2006 and that Bobby had scored at a grade equivalent of 3.5. (Exhibit I).

RESPONSE 54

Admitted. However, Ms. Sherman testified that this data input was in error (Sherman testimony, 8/25/06 pp. 71 – 76).

**Retesting and Observations by Dr. Emerson – May 2006**

55. In April 2006, Dr. Emerson readministered the tests given in July 2005 to assess Bobby's progress during Grade 6. Over the nine-month period, Bobby demonstrated a gain of only .1 grade equivalency in word reading (from 1.9 to 2.0); a .2 grade equivalency gain in pseudo word decoding (from 1.9 to 2.1); a .6 grade equivalency gain in reading comprehension (2.6 to 3.2); a .3 grade equivalency gain in spelling (2.2 to 2.5); and .2 grade equivalency gain in written expression (2.9 to 3.1). Notably, in all areas, despite the nominal gains, Bobby remained 3 – 4 years behind his peers. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 35-39) (Exhibit 8).

RESPONSE 55

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts or that her testing is accurate, and to the extent they are considered facts, they are denied. Otherwise, denied.

56. At the time of her reevaluation, Dr. Emerson noted that Bobby was less willing to read, was more fragile and tended to shut down more easily. (Testimony of Dr. Carol Emerson, 8/10/06, p. 46).

RESPONSE 56

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts or that her testing is accurate. Otherwise, denied.

57. Bobby expressed concern to Dr. Emerson that he cannot read and that he does not think that he will ever be able to read. (Testimony of Dr. Carol Emerson, 8/10/06, p. 47).

RESPONSE 57

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

58. Based upon Bobby's testing compared with his average intelligence, Dr. Emerson concluded that Bobby had not made effective progress under the school's special education program because he was not provided with specific sequential consistent multi-sensory reading instruction. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 25-28, 41).

RESPONSE 58

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

59. Bobby is stigmatized by accommodations that identify him to regular-education peers as being unable to read, or by being removed from general-education activities. Bobby does

not feel like he is part of the "normal classroom" and his self esteem suffers. (Testimony of Dr. Carol Emerson, 8/10/06, p. 34).

RESPONSE 59

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

60. Dr. Emerson recommended that Bobby be taught in a an immersion-based program, providing small class instruction of 7 – 8 similarly disabled students, with all related services provided within the classroom. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 43-46).

RESPONSE 60

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

61. In Dr. Emerson's opinion, Bobby will benefit from a program where he is in a small group with other children who share the same disability. This arrangement will allow Bobby to learn in an environment where he does not believe that he is the only one in the classroom that requires accommodations, and that he remains part of the group rather than being pulled out for various activities. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 48-49).

RESPONSE 61

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts or that her testimony is accurate and to the extent they are considered facts, they are denied. Otherwise, denied.

62. Bobby will also benefit from a schedule that provides sensory supports within the classroom. Bobby suffers from sensory integration difficulties that require frequent breaks and activities to allow him to focus. (Testimony of Dr. Carol Emerson, 8/10/06, pp. 50-51).

RESPONSE 62

Admitted that Dr. Emerson testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Emerson are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Testing and Observations by Dr. Steve Imber**

63. The Parents retained Dr. Steven Imber to conduct additional testing in July 2006. (Denise Slater Testimony, 8/16/06, p. 43).

RESPONSE 63

Admitted.

64. Dr. Imber had initially evaluated Bobby in 1999 and 2001. At the time of the earlier testing, Dr. Imber found that Bobby was performing within the low average to below average range on various measures of reading. In his 2001 report, Dr. Imber noted that services provided to Bobby were "quite fragmented" and that Bobby "appears fatigued

and overwhelmed. He also observed that Bobby displayed difficulty relating to his peers. (Exhibit 9) (Dr. Imber testimony, 8/16/06, pp. 106-109).

RESPONSE 64

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

65. In August 2006, Dr. Imber administered the Woodcock Diagnostic Reading Battery, the same test administered by the District on May 24, 2005. (Dr. Imber testimony, 8/16/06, p. 119).[2]

RESPONSE 65

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

66. By the District's testing in May 2005, at the end of his Grade 5 studies,, Bobby had a total reading grade equivalency score of 3.4; reading skills of 3.2; reading comprehension of 3.7; letter-word identification of 2.9; word attack of 3.8; reading vocabulary of 3.9 and passage comprehension of 3.6. (Exhibit II).

---

[2] Denise Sherman testified that Dr. Imber administered a different test than that which was given by the District. (Sherman testimony, 8/23/06, p. 38). Sherman's conclusion was based upon Dr. Imber's report (Exhibit 13), in which he mistakenly referenced the tests administered by **both** himself and the District as the "Woodcock-Johnson III" rather than the "Woodcock Diagnostic Reading Battery." However, Dr. Imber's testimony at the hearing is clear that the test that he administered was the Woodcock Diagnostic Reading Battery, the same as that given by the District. (Dr. Imber Testimony, 8/16/06, p. 119).

RESPONSE 66

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts or that his testing is accurate. Otherwise, denied.

67. By Dr. Imber's testing administered in August 2006, after Bobby had completed Grade 6, Bobby scored as follows: total reading: 2.8; reading skills: 2.6; reading comprehension: 3.8; letter-word identification: 2.8; word attack: 2.2; reading vocabulary: 5.1; and passage comprehension: 3.0. (Exhibit 13) (Dr. Imber testimony, 8/16/06, pp. 121-125).

RESPONSE 67

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts or that his testing is accurate. Otherwise, denied.

68. Dr. Imber also administered the San Diego Reading Assessment, in which he found that Bobby was reading at the third grade level. (Exhibit 13) (Dr. Imber testimony, 8/16/06, pp. 128-29).

RESPONSE 68

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts or that his testing is accurate. Otherwise, denied.

69. Based upon his testing, Dr. Imber concluded that Bobby's ability to decode words is substantially below grade level, with performance at the second- to beginning-third grade level. He also concluded that Bobby was approximately four years behind grade level in

silent reading comprehension and his ability to sound out words. (Dr. Imber Testimony, 8/16/06, pp. 134-35).

RESPONSE 69

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

70. In regard to spelling, Dr. Imber found that Bobby was performing at the 1.7 grade level, more than five years behind grade equivalency. Further, Bobby's performance in spelling has declined since Grade 4. (Exhibit 13) (Dr. Imber Testimony, 8/16/06, p. 135).

RESPONSE 70

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts or that his testing is accurate. Otherwise, denied.

71. Based upon his testing, it is Dr. Imber's opinion that Bobby has not made effective progress in reading under the District's program. Further, it is Dr. Imber's opinion that, with an appropriate program and support, a student with Bobby's cognitive ability should make substantial progress. (Dr. Imber Testimony, 8/16/06, p. 136).

RESPONSE 71

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

72. In Dr. Imber's opinion, Bobby would benefit from a placement with students who have similar cognitive abilities and similar learning issues, and from a program that is based

upon an immersion model that provides individualized and intensive reading intervention. (Dr. Imber Testimony, 8/16/06, p. 137).

RESPONSE 72

Admitted that Dr. Imber testified to this effect. However, the Defendant does not admit that the opinions expressed by Dr. Imber are facts and to the extent they are considered facts, they are denied Otherwise, denied.

**Denise Slater Observation Regarding Reading Progress**

73. Bobby's mother, Denise Slater, works with Bobby on his homework on a regular basis. She did not notice any improvement in Bob by's ability to read during the 2005-06 school year. (Denise Slater Testimony, 8/16/06, pp.26, 52).

RESPONSE 73

Admitted that Ms. Slater testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

74. While Bobby "passed" his classes and was "promoted" by the Defendant to Grade 7, his grades are based upon the accommodations and modifications that he receives. (Denise Slater Testimony, 8/16/06, p. 50).

RESPONSE 74

Admitted that Ms. Slater testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Testing and Observations by Sheryl DiMase**

75. The Parents retained Sheryl DiMase to provide reading and spelling tutoring during the summer beginning in June 2006. (Sheryl DiMase Testimony, 8/23/06, p. 95).

RESPONSE 75

Admitted.

76. Ms. DiMase has been certified as an Orton-Gillingham instructor since 1993 or 1994. (Sheryl DiMase Testimony, 8/23/06, p. 95).

RESPONSE 76

Admitted that Ms. DiMase testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. DiMase are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

77. In reading assessment tests administered by Ms. DiMase in June 2006, Bobby scored at the "middle to end of second grade" grade equivalency, in the first percentile according to his age. (Sheryl DiMase Testimony, 8/23/06, pp. 97-98).

RESPONSE 77

Admitted that Ms. DiMase testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. DiMase are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

78. In spelling assessment tests administered by Ms. DiMase in June 2006, Bobby scored at the "end of first, beginning of second" grade equivalency, in the first percentile according to his age. (Sheryl DiMase Testimony, 8/23/06, p. 98).

RESPONSE 78

Admitted that Ms. DiMase testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. DiMase are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**2006-07 Proposed IEP**

79. For the 2006-07 school year, the Defendant proposed an IEP in which Bobby would receive instruction in math, social studies and science in the regular education classroom with a regular education and a special education teacher. (Maureen DeCrescenzo Testimony, 9/6/06, pp. 42-43) (Exhibit G).

RESPONSE 79

Admitted.

80. Under the Defendant's proposal, the classroom size in the collaborative classroom would range from 20-22 students, four or five of whom will be on IEPs. (Maureen DeCrescenzo Testimony, 9/6/06, pp. 43, 69).

RESPONSE 80

Admitted.

81. For the 2006-07 school year, the District proposed that Bobby shall receive "intensive reading" for .7 hours per day, and three periods of one-to-one Orton-Gillingham instruction per week. (Denise Sherman testimony, 8/23/06, pp. 24-25, 60-61)(Exhibit I) (Exhibit G) (Maureen DeCrescenzo Testimony, 9/6/06, p. 42, 66-68).

RESPONSE 81

Admitted.

82. Under the proposed 2006-07 IEP, Bobby would receive intensive reading for .7 hours per day in a classroom of five students. (Maureen DeCrescenzo Testimony, 9/6/06, p. 43).

RESPONSE 82

Admitted.

83. The "intensive reading" instruction offered by the Defendant for the 2006-07 school year is .8 hours **less** than Bobby received in Grade 6. (Denise Sherman testimony, 8/23/06, pp. 24-25, 60-61) (Maureen DeCrescenzo Testimony, 9/6/06, p. 68) (Exhibit J).

RESPONSE 83

Denied.

84. Ms. Sherman testified that, as Bobby's teacher, she needed the full 1.5 hours of intensive reading, and that the proposed reduction in time "should be monitored closely." (Denise Sherman testimony, 8/23/06, pp. 60-61).

RESPONSE 84

Admitted that Ms. Sherman testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Sherman are facts. Otherwise, denied.

85. In the 2005-06 IEP, Bobby's reading goal was to read 120 words per minute correctly. (Exhibit J) (Maureen DeCrescenzo Testimony, 9/6/06, p. 70-71).

RESPONSE 85

Admitted.

86. In May 2006, the Defendant's testing indicated that Bobby was reading 65 words per minute correctly. (Exhibit M).

RESPONSE 86

Admitted.

87. Under NECAP standards, a fifth grade student is expected to read 160 – 200 words per minute correctly, with an improvement to 215 – 245 words per minute correctly by seventh grade. (Maureen DeCrescenzo Testimony, 9/6/06, p. 73-74).

RESPONSE 87

Admitted.

88. As a reading goal in the proposed 2006-07 IEP, the Defendant projected that Bobby would read 127 words correctly per minute, an increase of only seven words per minute from the previous year's IEP. (Exhibit I) (Maureen DeCrescenzo Testimony, 9/6/06, p. 71).

RESPONSE 88

Admitted.

89. In May 2006, the Parents rejected the District's proposed IEP. The Parents rejected the IEP because the program proposed by the District was essentially the same that had been provided in Grade 6, except for a **reduction** in remedial reading, and because the Parents had no observed any progress under the previous IEP. (Denise Slater Testimony, 8/16/06, pp. 28-29).

RESPONSE 89

Specifically denied that there is a reduction in reading related services. Otherwise, admitted that Ms. Slater testified to this effect. However, the Defendant does not admit that the opinions expressed by Ms. Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**Wolf School**

90. Wolf School is certified by the Rhode Island Department of Education as an independent school but, at the time of the hearing, was not certified as a special education school. (Jessica Robins Miller Testimony, 8/16/06, pp. 56-58).

RESPONSE 90

Admitted.

91. Wolf School has been an approved placement for children receiving special education services under an IEP from both Rhode Island and Massachusetts school districts. (Jessica Robins Miller Testimony, 8/16/06, pp. 58-59).

RESPONSE 91

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

92. Wolf School services students with average to above average cognitive abilities who have demonstrated language-based learning disabilities, sensory processing difficulties and social pragmatic challenges. (Jessica Robins Miller Testimony, 8/16/06, p. 60).

RESPONSE 92

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts. Otherwise, denied.

93. Wolf School provides small class sizes, with between 6 and 8 students per class, with no greater than a 1:4 student:teacher ratio. (Jessica Robins Miller Testimony, 8/16/06, pp. 61, 63) (Exhibit 17).

RESPONSE 93

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts. Otherwise, denied.

94. Wolf School operates under an immersion model where all services, such as occupational therapy or speech pathology, are provided in the classroom during the course of teaching the regular curriculum. The Wolf School does not pull out any child for services. (Jessica Robins Miller Testimony, 8/16/06, pp. 62, 64-65).

RESPONSE 94

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts. Otherwise, denied.

95. Wolf School's reading program is based upon Orton-Gillingham, supplemented by other programs. All teachers are Orton-Gillingham certified. (Jessica Robins Miller Testimony, 8/16/06, pp. 66-68).

RESPONSE 95

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

96. Under the Wolf School program, the regular curriculum would be delivered to Bobby in a small group at his current reading level. (Jessica Robins Miller Testimony, 8/16/06, pp. 71-72).

RESPONSE 96

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

97. Wolf School provides students with assistive technology according to their needs. (Jessica Robins Miller Testimony, 8/16/06, pp. 100-102).

RESPONSE 97

Admitted that Ms. Miller testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Miller are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

98. Transportation to Wolf School in East Providence is approximately 45-60 minutes in each direction from Bobby's home. (Denise Slater Testimony, 8/16/06, p. 36).

RESPONSE 98

Admitted.

99. When Bobby takes the bus from his home to school in Exeter-West Greenwich, the trip is over one hour in each direction. (Denise Slater Testimony, 8/16/06, p. 36).

RESPONSE 99

Admitted that Ms. Slater testified to this effect. However, Defendant does not admit that the opinions expressed by Ms. Slater are facts and to the extent they are considered facts, they are denied. Otherwise, denied.

**VERIFICATION**

I, Maureen DeCrescenzo, Director of Special Services of Exeter-West Greenwich School District, having been duly sworn, do hereby swear and affirm that I have read the foregoing Defendants' Verified Response to Plaintiff's Statement of Undisputed Fact, and that to the best of my information, knowledge and belief the responses contained therein are true and accurate.

Maureen DeCrescenzo, Director of
Special Services

STATE OF RHODE ISLAND
COUNTY OF KENT

In West Greenwich, Rhode Island, on the 9th day of May, 2007, before me personally appeared Maureen DeCrescenzo, who made oath that she knows the contents thereof and that the same are true, excepting those matters stated upon information and belief, and those matters he believes to be true.

Notary Public Andrew Henneous
My commission expires: 1-9-2011

EXETER-WEST GREENWICH
REGIONAL SCHOOL DISTRICT
By its attorneys,

*/s/ Andrew D. Henneous*

Andrew D. Henneous, Esq. (#5935)
BRENNAN, RECUPERO, CASCIONE,
SCUNGIO & MCALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
ahenneous@brcsm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this Defendants' Verified Response to Plaintiffs' Statement of Undisputed Facts was sent to the following, on this the ____ day of May, 2007:

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Andrew D. Henneous**
  ahenneous@brcsm.com
- **Jeffrey M. Sankey**
  jsankey@dolanconnly.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

/s/ Andrew D. Henneous, Esq.