UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DENISE SLATER AND ANDREW SLATER, AS PARENTS AND NEXT FRIEND OF ROBERT SLATER, A MINOR<br>Plaintiffs<br><br>v.<br><br>EXETER-WEST GREENWICH REGIONAL SCHOOL DISTRICT<br>Defendant | C.A. No. 06-527ML |

**DEFENDANTS' VERIFIED STATEMENT OF UNDISPUTED FACTS**

1. On May 26, 2006 a consensus of the Individualized Education Program ("IEP") team proposed an IEP for Robert for the 2006-2007 school-year (see Exhibit I).[1]

2. Robert's parents disagreed with the placement that was proposed in the IEP and asked for Robert to be placed at the Wolf School, a private school (See Request for Due Process, p. 3).

3. On June 5, 2006 the Exeter-West Greenwich School Department ("District"), through its Director of Special Education, Maureen DeCrescenzo, provided written notice to the parents as to why the IEP team disagreed with their request and what the team relied upon in making their determination (see Exhibit C).

1 All references to Exhibits and Transcripts refer to those from the Administrative Hearing. A complete record of the Administrative Hearing was filed with the Court by the Defendant on January 18, 2007.

4. Robert is a twelve (12) year old boy who was about to enter the seventh (7th) grade at the commencement of the hearings.

5. Robert is a severely dyslexic child (Aug. 10, Tr. p. 23; Aug. 16, Tr. p. 145; Aug. 23, Tr. p. 119).

6. School personnel believes that he is one of the most severely dyslexic children they have ever worked with (Aug. 23, Tr. p. 28).

7. All of the parties agree that Robert is reading below his grade level.

8. Robert's IEP team(s) have tried a variety of different interventions and programs with Robert throughout his time in the District (Aug. 23, Tr. pp. 29-30).

9. Not all have been successful (Aug. 23, Tr. pp. 29-30).

10. The parents have not contested the adequacy of prior IEP's and have not requested compensatory services (see Request for Due Process p. 2 "Specific Complaint").

11. The parents have not challenged the content of the 2005-2006 IEP (see Request for Due Process p. 2 "Specific Complaint").

12. The parents challenged Robert's placement for the 2006-2007 school year (see Request for Due Process, pg. 3).

13. In January of 2005 Robert began to receive one on one services with Diana Clark, a certified Orton Gillingham reading specialist (Aug. 23, Tr. p. 118).

14. Robert has made progress in this Orton Gillingham instruction (Aug. 23, Tr. pp. 125-126, 130; Exhibit HH).

15. Robert continued to receive reading services in a small group setting (Aug. 23, Tr. pp. 11-13) as well as one on one services in the Lindamood Bell reading program (Sept. 6, Tr. p. 6).

16. Robert's IEP service providers believe that Robert had made appropriate progress utilizing the above services (Aug. 23, Tr. pp. 22, 25, 125,130; Sept. 6, Tr. pp. 9-10).

17. Dr. Emerson, presented scores indicating progress during this period as well (see Exhibit 14).

18. Based upon Robert's disability, he cannot be expected to progress at the same rate as a non-disabled reader (Aug. 10, Tr. pp. 64-66).

19. Robert's special educator and his reading specialist both believe that Robert has made good progress in reading during the 2005-2006 school year (Aug. 23, Tr. pp. 22, 25, 125,130).

20. Robert actively participated in math and science classes and passed (Aug. 23, Tr. pp. 81-84).

21. Robert received the accommodations and modifications as required under his IEP to help him access the curriculum (Aug. 16, Tr. p. 50).

22. Robert passed not just math and science, but all of his classes in sixth (6th) grade (Aug. 16, Tr. p. 49; Exhibit BB).

23. Robert's grades were all based on an appropriate understanding of the sixth (6th) grade curriculum (Aug. 23, Tr. pp. 15-19,82, 113-114).

24. At the Exeter-West Greenwich Middle School, the placement proposed in the 2006-2007 IEP, the same highly qualified special educator (also

an Orton Gillingham trained reading instructor) would be with Robert in all of his academic classes (Sept. 6, Tr. pp. 44-46).

25. This teacher would also provide Robert with reading instruction in a small classroom setting (Sept. 6, Tr. pp. 44-46).

26. Robert would continue to receive one-on-one Orton Gillingham reading instruction and Lindamood Bell reading instruction (Sept. 6, Tr. p. 42).

27. All of Robert's services would be provided within the classroom (Sept. 6, Tr. pp. 65, 79)

28. The Middle School placement provided for ample interaction and communication between Robert's teachers (Sept. 6, Tr. pp. 46-48).

29. All of his teachers would be coordinating assignments and communicating regularly (Sept. 6, Tr. pp. 46-47).

30. At the Middle School, Robert's special educator (also certified in Orton Gillingham) would be in all of Robert's academic classes and would also be the individual providing small group reading instruction to Robert. (Sept. 6, Tr. pp. 44-46)

31. She would be able to coordinate all of his reading services. (Sept. 6, Tr. pp. 44-46)

32. She is also the teacher during Robert's resource period (Sept. 6, Tr. p. 45).

33. This period can be utilized to help Robert with reading (or any other needs) in any and all of his academic classes, and also provides

another opportunity to provide specialized reading instruction (Sept. 6, Tr. p. 46).

34. Based upon his proposed Middle School schedule, Robert would actually have more time of direct special education services with a certified reading specialist than in the prior year, contrary to Plaintiff's assertions. (see Exhibits I and J, Sept. 6, Tr. p. 67)

35. At the Middle School, Robert would still receive a multi sensory approach to reading (Sept. 6, Tr. p. 67).

36. Robert would still receive one on one Orton Gillingham reading instruction (Sept. 6, Tr. p. 67).

37. Robert would also receive his Intensive English Language Arts (ELA) instruction, but is would be for 47 minutes instead of 1.5 hours (Sept. 6, Tr. p. 67-68).

38. Robert would also receive a Resource class (that was not provided in sixth grade) that would continue to be a reading support (Sept. 6, Tr. p. 68).

39. The Resource class would focus on reading intervention that is earmarked around the curriculum (Sept. 6, Tr. p. 68).

40. When the services are added up, Robert received ten (10) hours per week of direct special education instruction (ELA, Individual Orton Gillingham and Speech Language) during the 2005-2006 school year (Exhibit J).

41. Robert was scheduled to receive eleven and three quarter (11.45) hours per week of direct special education instruction (ELA, Individual Orton Gillingham, Speech Language, Resource) during the 2006-2007 school year (Exhibit I, Sept. 6, Tr. p. 67).

42. Prior to Robert's placement at Wolf School, Tech Access had recommended new technology which will be beneficial to Robert and help him access the curriculum (Aug. 23, Tr. pp. 26-27, 86-87; Sept. 6, Tr. pp. 49-50).

43. Members of the IEP team believe that the 2006-2007 proposed IEP allows for academic progress in the upcoming school year (Aug. 23, Tr. pp. 22, 25, 125,130).

44. A consensus of the IEP team, including Robert's reading specialist, his special educator (also a reading specialist), the Director of Special Education and his science and math teacher believed the IEP proposed for the 2006-2007 school year is appropriate and that Robert can be educated in the District's middle school (Aug. 23, Tr. pp. 22-27, 84, 87, 126; Sept. 6, Tr. p. 41).

45. Despite this, Robert was unilaterally placed by his parents at the Wolf School.

46. The Wolf School was not special education certified (Aug. 16, Tr. p. 86).

47. The entire Wolf School consists of approximately 48-49 students from Rhode Island, Massachusetts and Connecticut (Aug. 16, Tr. pp. 60).

48. Robert's seventh (7th) grade class would only consist of six (6) other children for all academic instruction (Aug. 16, Tr. p. 91).

49. Robert would not be taught by a certified special educator (Aug. 16, Tr. pp. 88-90).

## VERIFICATION

I, Maureen DeCrescenzo, Director of Special Services of Exeter-West Greenwich School District, having been duly sworn, do hereby swear and affirm that I have read the foregoing Plaintiffs' Verified Statement of Undisputed Facts, and that to the best of my information, knowledge and belief the facts contained therein are true and accurate.

Maureen DeCrescenzo
Maureen DeCrescenzo, Director of Special Services

STATE OF RHODE ISLAND
COUNTY OF KENT

In West Greenwich, Rhode Island, on the 9th day of May, 2007, before me personally appeared Maureen DeCrescenzo, who made oath that she knows the contents thereof and that the same are true, excepting those matters stated upon information and belief, and those matters he believes to be true.

Notary Public Andrew Henneous
My commission expires: 1-9-2011

EXETER-WEST GREENWICH
REGIONAL SCHOOL DISTRICT
By its attorneys,

*/s/ Andrew D. Henneous*
Andrew D. Henneous, Esq. (#5935)
BRENNAN, RECUPERO, CASCIONE, SCUNGIO & MCALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
ahenneous@brcsm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this Defendants' Verified Response to Plaintiffs' Statement of Undisputed Facts was sent to the following, on this the ____ day of May, 2007:

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Andrew D. Henneous**
  ahenneous@brcsm.com
- **Jeffrey M. Sankey**
  jsankey@dolanconnly.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

/s/ Andrew D. Henneous, Esq.