UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DENISE SLATER AND ANDREW SLATER, AS PARENTS AND NEXT FRIEND OF ROBERT SLATER, A MINOR<br>Plaintiffs<br>v.<br>EXETER-WEST GREENWICH REGIONAL SCHOOL DISTRICT<br>Defendant | C.A. No. 06-527ML |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

## I. INTRODUCTION

This case constitutes the Plaintiffs' appeal of a hearing officer's decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400, et seq., and raises the issue of whether the Defendant, Exeter West-Greenwich Regional School District ("District" or "Defendant"), should be required to reimburse the Plaintiffs for the unilateral placement of their son ("Bobby") in private school for the 2006-07 school year. After a hearing on the Plaintiffs' Motion for Summary Judgment on June 11, 2007, the Magistrate Judge issued his Report and Recommendations, denying the Plaintiffs' Motion and affirming the hearing officer's decision. The Plaintiffs respectfully file this objection to the Report and Recommendations on the following grounds.

## II. ARGUMENT

### A. The Magistrate Judge granted undue deference to the findings of the Hearing officer.

In his decision, the Magistrate Judge noted that a district court reviewing an administrative decision under the IDEA must give "due deference" to the hearing officer's

findings of fact. (Report, p. 4). In this case, a critical predicate to the determination of this matter involves the amount of deference to be accorded to those findings. In determining that amount, "the amount of deference bestowed upon the hearing officer is increased where her findings are 'thorough and complete.'" Nein v. Greater Clark County School Corporation, 95 F.Supp. 961, 965 (S.D.Ind. 2000), citing Union School District v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994). *See also* Walczak v. Florida Union Free Sch. Dist.,142 F.3d 119, 127-29 (2d Cir. 1998) (deference is appropriate when hearing officer's review was "thorough" and demonstrated careful review of the evidence). On the other hand, where the hearing officer's findings are not thorough, accurate and supported by the evidence, her determination is entitled to little or no deference. *See* J.P. ex rel. Peterson v. County School Bd. of Hanover County, Va., 447 F.Supp.2d 553, 564 (E.D.Va.,2006) (factual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were "regularly made").

Under the facts of this case, the Plaintiffs respectfully submit that the hearing officer's decision was not thorough, accurate or supported by the evidence, and that the Magistrate Judge granted excessive deference and too quickly abdicated his discretion to make independent factual findings. In their Motion for Summary Judgment, the Plaintiffs have detailed the discrepancies in the Hearing officer's decision (pp. 25–30) and will simply summarize these discrepancies below.

1. Lee Ann McWeeney was the speech and language teacher employed by the Defendant to provide specialized reading support services to Bobby. Ms. McWeeney pointed out that Bobby had received "an inconsistent approach" to reading instruction. At the hearing, she testified that Bobby was experiencing frustration as a result of being exposed to "different

[reading] program approaches." (SOF ¶ 44). She also questioned the "clinical validity and therapeutic soundness of presenting two different [reading] approaches to accomplish the same goal." (SOF ¶ 44). When the Plaintiffs were struggling to decide Bobby's placement for the 2006-07 school year, they were deeply influenced by Ms. McWeeney's opinions and their belief that her observations had not been adequately addressed by the District. However, despite the critical relevance of this evidence to the issue, the hearing officer's summary of Ms. McWeeney's testimony was limited to: "Lee Ann McWeeney is a speech and language pathologist who has been employed by the district for 23 years. She testified that she provided the student with services twice per week for 30 minutes each. She utilized the Lindamood Bell program (LIPS) in her course of instruction." The hearing officer made no finding whether Ms. McWeeney's testimony about the teaching disparities was credible or incredible. Rather, she simply ignored it as if it were never said. Furthermore, in his Report, the Magistrate Judge made no reference to Ms. McWeeney's testimony and did not reconcile the hearing officer's omission with his finding that the hearing officer's determination was supported by the record.

2. The hearing officer made no reference to the testimony of Bobby's classroom teacher, Anthony Buco, that Bobby was "very frustrated" with reading "so, you have to sit down with him and actually read with him, but he would be very frustrated with that," and that Bobby "would almost become angry because he can't read the words, very frustrated, and you could see a tenseness in his face." (SOF ¶ 26). The hearing officer also neglected to make any reference to and failed to analyze Mr. Buco's observation that Bobby was very confused with the reading instruction because "[p]eople were showing him a couple of different things and he was getting very confused with that." (SOF ¶ 27). The hearing officer ignored Mr. Buco's testimony that he did not observe Bobby to make "any progress in reading" during the school

year. (SOF ¶ 25). In his Report, the Magistrate Judge did not refer to Mr. Buco's testimony and did not explain how its omission by the hearing officer still allowed her findings to be considered thorough or accurate.

3. The hearing officer completely omitted any reference to another classroom teacher, Danielle Smith, who testified that Bobby was "frustrated to the point of being completely disengaged in the class, any time he had to do any reading" (SOF ¶ 31) and that Bobby "resisted working with other children" and that he "cried sometimes." (SOF ¶ 32). Ms. Smith testified that she herself was "very frustrated" with the services that were provided to Bobby. (SOF ¶ 37). The Magistrate Judge's Report also fails to reference Ms. Smith's testimony or the Hearing officer's failure to reference this critical witness.

4. The hearing officer's conclusion that Bobby has "master[ed] grade 6 content material" was directly contradicted by Bobby's classroom teacher. Danielle Smith testified that that Bobby was not exposed to "half" of the Grade 6 social studies curriculum" and that his disability "caused him to fall behind his peers." (SOF ¶¶ 39, 40). This critical discrepancy was not addressed by the Magistrate Judge or the hearing officer.

As cited in the Plaintiffs' Motion for Summary Judgment, the recent *Peterson* case provides useful guidance where the findings of a hearing officer are lacking. There, where the Court found that the hearing officer's decision made sparse and inaccurate findings of facts, failed to make determinations concerning the credibility of witnesses, and failed to distinguish the opinions of experts, the Court held that it could not give "due weight' to the decision because there was no reliable basis to believe that the evidence was thoroughly or accurately considered. J.P. ex rel. Peterson v. County School Bd. of Hanover County, Va., 447 F.Supp.2d 553, 564 -566 (E.D.Va.,2006).

In the present case, the hearing officer completely overlooked the testimony of the Plaintiff's own employees, teachers who spent the better part of their day directly observing Bobby. These were the individuals with whom Bobby's parents had the greatest contact, and their observations concerning Bobby's lack of progress and the school's inability to provide effective remediation led them to their difficult decision to place Bobby in a private school. Where the hearing officer's decision simply ignored this critical evidence that so influenced the Plaintiffs, her decision can hardly be characterized as thorough and accurate, and it is not deserving of the significant deference allowed by the Magistrate Judge.

**B. The Magistrate Judge erroneously distinguished the *Nein* case, which stands for the principle that a child who makes minimal progress is entitled to a private placement where the public school system fails to provide FAPE.**

The Magistrate Judge correctly noted the Plaintiffs' reliance upon the District Court decision in Nein v. Greater Clark County Sch. Corp., 95 F.Supp. 2d 961 (S.D. Ind. 2000). The Magistrate Judge then moved to distinguish that case on the basis that the student in Nein "made no progress after three years of special education services" and because the school district in Nein "proposed to stand pat and continue with the same teaching program." (Report, p. 10).

A close reading of Nein reveals that, contrary to the Magistrate Judge's reading of the decision that the student demonstrated no progress, the District Court in fact acknowledged that the student made *six months* progress in reading during the relevant school year. Id. at 969-72. This is a vital distinction because, despite the student's six months progress, the Nein Court determined that such "merely trivial or minimal progress is not sufficient, at least where there is reason to expect that a child should be able to make meaningful educational progress with appropriate and necessary services." Id. at 975.

Second, the Defendant in the present case, unlike the district in Nein, did not propose to "stand pat and continue with the same teaching program" for Bobby. To the contrary, the Exeter-West Greenwich School District proposed to reduce the amount of Bobby's intense reading instruction from 1.5 hours per day in sixth grade to .7 hours per day in seventh grade. While the Magistrate Judge went to far greater lengths than the hearing officer to analyze the totality of the District's proposed program, the Plaintiffs submit that the proposal did not satisfy FAPE. Simply assigning a special education teacher to assist Bobby – along with other similarly disabled children – in the classroom did not adequately address the severity of Bobby's reading deficiencies. Simply put, Bobby needs to learn to read, not to be "read to" as a means for him to follow what is happening in the classroom. The testimony of teachers Smith and Buco is replete with examples why this "in-classroom" program has not satisfied Bobby's needs. (SOF ¶¶ 24-29, 31-36). From the parents' perspective, they had not seen progress under this model in the sixth grade, and it would have been a complete abandonment of their parental roles for them to have blindly accepted a .8 hour reduction in direct intensive reading services in exchange for the promise of a previously unsuccessful program.

**C. The Magistrate Judge's Report and Recommendation does not recognize that educational progress must be more than trivial.**

As discussed in the Plaintiffs' Motion for Summary Judgment, the Supreme Court has construed the statute's FAPE mandate to require "education specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982). As an eligible child with a disability, Bobby is entitled to a program and services that are tailored to meet his unique needs and that provide significant, meaningful benefit in light of his needs and potential, that is, "effective results" and "demonstrable improvement" in the educational and

personal skills identified as special needs. 34 CFR 300.300(3)(ii); Lenn v. Portland School Committee, 998 F.2d 1083 (1st Cir. 1993)), citing Roland M v. Concord School Committee, 910 F.2d 983, 989 (1st Cir. 1990). The educational benefit of an IEP "must be gauged in relation to a child's potential." Ridgewood Bd. of Education v. N.E. ex rel M.E., 172 F.3d 238, 247 (3d Cir. 1999) (quoting Polk v. Susquehanna Intermediate Unit 16, 853 F.2d 171, 185 (3d Cir. 1988). To fulfill this mandate a district court must "analyze the type and amount of learning" of which the student is capable. Ridgewood, 172 F.3d at 248. *See also* T.R. v. Kingwood Tp. Bd. of Educ. 205 F.3d 572, 578 (3d Cir. 2000).

In this case, neither the hearing officer nor the Magistrate Judge made the requisite findings concerning Bobby's capabilities, each too quickly equating Bobby's minimal progress as a reflection of some irremediable limitation of his disability. As discussed at length in their Motion for Summary judgment, the Plaintiffs submit that Bobby's progress, if any, has been no more than trivial given his innate intelligence. (Memorandum, pp. 12-18). Furthermore, the acceptance of such *de minimis* results undermines the fundamental requirement that a district provide "meaningful access" to education. Walczak, 142 F.3d at 133. "The provision of merely 'more than a trivial educational benefit' does not meet" the meaningful benefit requirement of *Polk.* Ridgewood, 172 F.3d at 247. *See also* T.R. v. Kingwood Tp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000).

**D. The Defendant violated the plaintiffs' substantive and procedural due process rights by testing Bobby in May 2006 without permission, and by then suppressing the test results.**

This issue has been briefed in detail in the Plaintiffs' Motion for Summary Judgment and will not be repeated here at length. (Memorandum, pp. 22-25). Simply put, the Plaintiffs submit that it strains the most liberal notions of credibility to accept an explanation of a "typographical

error" where the entry in question consists of (1) a different date of the month; (2) a different year; and (3) a different test score. Both the hearing officer and the Magistrate Judge criticize the Plaintiff for failing to "offer any other evidence on the issue" other than the cross examination of the teacher who made the "error." However, this criticism begs the question, what other evidence can there be other than the teacher's own entries concerning the test? If the test was destroyed, the Plaintiffs cannot produce it. If it was in fact administered to Bobby, Bobby unfortunately cannot lucidly testify about its administration because, as a child who has been tested constantly over several years, he cannot distinguish taking a Woodcock Reading Diagnostic Reading Battery from his other daily activities.

This issue is critical and has received what some may perceive as undue attention only because, if the test was administered as the Defendant's own document indicates and as the Plaintiffs believe, the District's own testing shows that Bobby made a gain of a mere .1 grade equivalency in reading progress over the course of one year. One only needs to review the Magistrate Judge's comprehensive analysis of various disputed indicia of progress to realize how this one test, administered by the District itself, may have impacted on the ultimate decision in this case.

Based upon the foregoing, the Plaintiffs respectfully request that the Court reject the Report and Recommendations of the Magistrate Judge and, instead, find both that the Defendant failed to provide FAPE to Bobby and that the Plaintiffs' placement of Bobby at the Wolf School was appropriate. Finally, the Plaintiffs request that the court order the Defendant to reimburse then for tuition and costs paid for Bobby's placement at the Wolf School for the 2006-07 school year.

Respectfully submitted,

*/s/ Jeffrey M. Sankey*__________

Jeffrey M. Sankey, RI Bar #4892
DOLAN CONNLY, P.C.
50 Redfield Street, Suite 202
Boston, MA 02122
(617) 265-3100
jsankey@dolanconnly.com