UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DENISE SLATER AND ANDREW SLATER, AS PARENTS AND NEXT FRIEND OF ROBERT SLATER, A MINOR<br>Plaintiffs<br>v.<br><br>EXETER-WEST GREENWICH REGIONAL SCHOOL DISTRICT<br>Defendant | C.A. No. 06-527ML |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Introduction

This case involves a dispute which arose under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §1400 et seq. On June 9, 2006 the parents, through their attorney, filed a request for an Impartial Due Process Hearing asking that "the hearing officer order placement at Wolf School at public expense" (see page 3 of Request). A hearing officer was appointed and hearings were held on August 10, 16, 23, and September 6, 2006. The Hearing Officer issued a written decision on November 7, 2006. In said Decision, the Hearing Officer ruled that "The District has provided a free appropriate public education for the student" and that "the Parent's request for placement at the Wolf School at public expense is denied" (Decision pp. 21-22).

The Parent's appealed the Hearing Officer's decision to this Court. A Pre-Trial conference was held on March 8, 2007 in Chambers. Briefs were

subsequently filed and on June 11, 2007 a hearing took place in front of Magistrate Judge Almond. On June 28, 2007 the Magistrate Judge issued his Report and Recommendation in which he denied the Plaintiff's Motion for Summary Judgment and affirmed the Hearing Officer's Decision. The Plaintiff has filed an Objection to the Magistrate's Report and Recommendation. The Defendant hereby Responds to said Objection.

Legal Argument

A. **The Magistrate granted the appropriate amount of deference to the Hearing Officer.**

Plaintiff points out several instances in which they feel there were "discrepancies" in the Hearing Officer's Decision. Plaintiff feels that these "discrepancies" prohibit the Magistrate from giving deference to the Hearing Officer. This interpretation is incorrect. Further, the alleged "discrepancies" are not discrepancies at all. They largely consist of incomplete portions of testimony which have been taken out of context and do not accurately reflect the whole testimony. The Defendant shall address Plaintiff's claims in a numbered fashion as set forth in Defendant's Memorandum in Support of the Objection to the Report and Recommendation of the Magistrate Judge.

**1.** Plaintiff cites the District's speech pathologist as questioning the use of different program approaches. However, Plaintiff fails to cite the complete testimony of that same pathologist on this issue. The pathologist actually testified that the Student was frustrated by the use of multiple programs on only two (2) occasions (Sept. 6, Tr. pp. 7-10). She further testified that despite these isolated incidents, the Student continued with the programs and made progress

(Sept. 6, Tr. p. 9). In addition, the pathologist testified that she felt the programs were appropriate and that the Student should continue to receive them (Sept. 6, Tr. pp. 9-10). She did suggest that it should be monitored to ensure that the Student's frustration didn't impede his progress in the future. However, she specified that she did not feel that it had impeded his progress at the time of the hearing (Sept. 6, Tr. p. 10).

**2.** The Hearing Officer clearly considered Mr. Buco's testimony regarding the Student's academic progress in math and science. Mr. Buco testified that Robert made academic progress (Aug. 23, Tr. p. 82) and that his self esteem rose over the course of the year (Aug. 23, Tr. p. 80). Mr. Buco testified that the proposed Individualized Education Plan was appropriate and that Robert could succeed if the services contained therein were delivered (Aug. 23, Tr. p. 84).

**3.** Ms. Smith did testify that she felt that Robert had difficulty reading and was frustrated. She also testified that her class during the 2005-2006 school year has five children with IEP's (Aug. 23, Tr. p 106). She testified that she only had access to a special educator every other week and taught the class alone during all other times (Aug. 23, Tr. pp. 106-107). She further testified that she was not special education certified and "I don't really know what else could have been done for him" (Aug. 23, Tr. p. 109).

The IEP proposed for the 2006-2007 school year was structured to address Ms. Smith's concern. The program offered would have had the same special educator (also a trained and certified reading specialist) in every one of Robert's classes to work with both Robert and the regular educator. It would

have provided the continuity and additional support that Ms. Smith felt was a problem. It should also be noted that Ms. Smith was the only educator that testified that Robert was exhibiting such levels of frustration in school. Mr. Buco, Ms. McWeeney and Ms. Clark noted frustration, but not nearly at the level alleged by Ms. Smith.

**4.** Ms. Smith testified that Robert had a clear understanding of the concepts in her classroom and that his oral presentations (which he was graded on) were based on the sixth grade social studies curriculum. Robert demonstrated the proficiency necessary in his academic subjects to advance from the sixth grade to the seventh grade.

When deciding cases such as the one at bar, the district court reviews the administrative record, which may be supplemented by additional evidence from the parties, and makes an independent ruling based upon the preponderance of the evidence. That independence is tempered by the requirement that the court give due weight to the hearing officer's findings. This intermediate level of review reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena. Lt. T.B. ex rel. N.B. v. Warwick School Committee, 361 F.3d 80, 83-84 (1st Cir. 2004) (*internal citations omitted*).

In Beitle v. East Greenwich School Committee, No. Civ. A. 06-62 ML (D.R.I Oct. 27, 2006) the parents argued, as the Plaintiff claims here, that the Hearing Officer "ignored" or "overlooked" crucial evidence. However, the Court pointed out that:

> "A review of the administrative record and the parties' memoranda reveals that the Hearing Officer was faced with conflicting evidence on may points. This court is, as noted above, required to give due deference to the Hearing Officer's resolution of these conflicts and findings of fact. Thus, the issue is not whether this court would have made the same determinations as the Hearing Officer but rather whether they are reasonably supported by the record and, if so, whether the Hearing Officer properly applied the law regarding FAPE to those findings" Beitle at 5.

A thorough reading of the record below makes it clear that the Hearing Officer considered all of the testimony and exhibits presented over four days of hearing, correctly applied the law, and found in favor of the District. This Hearing Officer has been appointed by the State of Rhode Island Department of Education to hear these types of cases. By virtue of this appointment, she is the individual the state relies on for her "expertise in the educational arena". Lt. T.B. ex rel. N.B. v. Warwick School Committee, 361 F.3d 80, 83-84 (1st Cir. 2004). The Hearing Officer is therefore entitled to deference. The Magistrate's Report and Recommendation recognizes this and gives the Hearing Officer the appropriate deference (Report and Recommendation p. 7-8).

**B. The *Nein* case is distinguishable from the matter before this Court.**

Plaintiff places much reliance on the decision in Nein v. Greater Clark County Sch. Corp., 95 F.Supp. 2d 961 (S.D.Ind. 2000). However, as correctly pointed out by the Magistrate Judge, Nein is distinguishable from the case before this Court (Report and Recommendation pp. 9-10). As referenced in the Report and Recommendation, the Nein case was dealing with three (3) years of IEP's and progress. At issue in the case at bar is the IEP that was proposed for the 2006-2007 school year. In Nein the Court relied in part on the fact that the

District did not have any trained and qualified personnel to deal with the students particular disability. Id. at 976. The District in Nein also apparently refused to offer or did not have available an intensive, individualized multi-sensory sequential reading program. Id. at 977. In fact, the Court found that the last three (3) IEP's offered by the District "essentially proposed to continue the same special education services". Id. at 978 The Court also considered that the latest IEP in did not provide for any direct teaching or technique to improve the students reading skills. Id. at 979.

None of these circumstances are present in the case before this Court. The District had provided trained and certified staff to work with Robert. The District was offering direct Orton Gillingham reading instruction. Orton Gillingham is a structured, multi-sensory reading program (Aug. 23, Tr. pp 117-118). The District was also offering the Lindamood Bell sequential phonemic program. (Sept. 6, Tr. p. 5). The District had continued to change the services in the IEP as the situation required. In fact, as noted by the Magistrate Judge, the administrative record reflects that the 2006-2007 IEP contained even more proposed direct special education instruction than in 2005-2006 (Sept. 6, Tr. pp. 42-46, 65, 68-69; Report and Recommendation pp. 10-11).

The 2006-2007 IEP also provided new assistive technology. The administrative record contains testimony from Tech Access as well as Robert's teachers that new technology which had been recommended would be beneficial to Robert and help him access the curriculum (Aug. 23, Tr. pp. 26-27, 86-87; Sept. 6, Tr. pp. 49-50).

**C. <u>The Magistrate Judge's Report and Recommendation recognized appropriate educational progress.</u>**

The Plaintiff quantifies Robert's educational progress as "trivial". (Plaintiff's Memorandum in Support of Objection to Report and Recommendation, pp. 7) This unfairly describes Robert's progress. Robert has passed all academic subjects, demonstrated an appropriate understanding of the sixth grade curriculum and progressed into the seventh grade. In addition, according to the trained and certified service providers who worked on a daily basis with Robert specifically in the area of his disability, reading, he was making appropriate progress (Sept. 6, Tr. pp. 9-10; Aug. 23, Tr. pp. 20-25, 30-32, 125-126).

Clearly the Hearing Officer choose to give more weight to the testimony of the educators who worked with Robert in his area of disability on a daily basis as opposed to evaluators who met Robert for a few hours solely for the purpose of testing him. Consequently, the Hearing Officer appropriately found that the credible evidence showed appropriate progress and that the District was providing a free and appropriate public education (Decision pp. 20-21).

**D. <u>Plaintiff's substantive and procedural due process rights were not violated by alleged improper testing.</u>**

This allegation by the Plaintiff is baseless and unsubstantiated. In addition, it was directly addressed by the Hearing Officer at the hearing and again by the Magistrate Judge (Report and Recommendation pp. 13-19). The witness involved testified definitively, under oath, that she did not conduct the test in question and that the notations on the 2006-2007 IEP were in error (Aug. 23, Tr. Pp. 71-75). The Hearing Officer correctly pointed out that if Plaintiff had

evidence on this issue, they needed to present it (Aug. 23, Tr. p.23-24). However, no testimony nor documentation was ever presented to support their "theory". There is simply nothing on the record to support their claim that a test was improperly given. When the teacher was questioned under oath, she gave a rational explanation for the scriveners error.

Further, as noted in the Report and Recommendation, the Plaintiffs voluntarily ended their line of questioning on this issue. There is nothing in the record to support a specific question or line of questioning that was denied or refused by the Hearing Officer (Report and Recommendation pp. 17-18).

## Conclusion

Therefore, for the reasons set forth above, the Plaintiff's Objection to the Magistrate Judge's Report and Recommendation should be denied, the Magistrate's Report and Recommendation should be accepted in full and the Plaintiff's appeal should be dismissed with prejudice.

EXETER-WEST GREENWICH
REGIONAL SCHOOL DISTRICT
By its attorneys,

*/s/ Andrew D. Henneous*___________
Andrew D. Henneous, Esq. (#5935)
BRENNAN, RECUPERO, CASCIONE,
SCUNGIO & MCALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
ahenneous@brcsm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this Defendants' Verified Response to Plaintiffs' Statement of Undisputed Facts was sent to the following, on this the ____ day of July, 2007:

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Andrew D. Henneous**
  ahenneous@brcsm.com
- **Jeffrey M. Sankey**
  jsankey@dolanconnly.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

/s/ Andrew D. Henneous, Esq.